

FILED

JUL - 1 2011

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

*POSTED ON WEBSITE*
*NOT FOR PUBLICATION*

**UNITED STATES BANKRUPTCY COURT**

**EASTERN DISTRICT OF CALIFORNIA**

**SACRAMENTO DIVISION**

| | |
|---|---|
| In re | Case No. 09-40067-E-13L |
| CHRISTINA RUTH STANLEY, | |
| Debtor(s). | |
| | |
| CHRISTINA RUTH STANLEY, | |
| Plaintiff(s), | Adv. Pro. No. 10-2043 |
| v. | Docket Control No.: None Provided |
| ONEWEST BANK, FSB, et al., | |
| Defendant(s). | |

**This memorandum decision is not approved for publication and may not be cited except when relevant under the doctrine of law of the case or the rules of claim preclusion or issue preclusion.**

### MEMORANDUM OPINION AND DECISION

Defendants Mortgage Electronic Registration Systems, Inc. ("MERS"), IMB HoldCo LLC, IMB Management Holdings LP, OneWest Bank Group LLC, OneWest Ventures Holdings LLC, and OneWest Bank, FSB ("OneWest") move for judgment on the pleadings on all Causes of Action in the First Amended Complaint ("FAC") pursuant to Federal Rule of Civil Procedure 12(c) as made applicable to this adversary proceeding by Federal Rule of Bankruptcy Procedure 7012(b).

Christina Stanley, the Plaintiff-Debtor, opposes the motion.

The court's decision is to grant the Motion, without prejudice and without leave to amend, as to Mortgage Electronic Systems, Inc., IMB HoldCo, LLC, IMB Management Holdings LP, OneWest Bank Group LLC, OneWest Venture Holdings, LLC as to all Causes of Actions and claims. The court grants the Motion, without prejudice and without leave to amend, as to the First Cause of Action to the extent that it requests injunctive relief or restitution, Fourth Cause of Action (R.E.S.P.A. Claims) and Fifth Cause of Action (Civil Conspiracy) and denies the Motion as to the First Cause of Action (Declaratory Relief) to the extent that it requests declaratory relief and the Second and Third Cause of Action (Violation of Automatic Stay and Damages) as against OneWest Bank, FSB.   Further amendments of the FAC shall be as authorized by the court.

## STANDARD OF REVIEW

The standard of review under Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 12(c) is the same as the standard under Fed. R. Civ. P. 12(b)(6). *See Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.* 313 F.3d 305, 308 n.8 (5th Cir. 2002); *Quest Communications Corp. v. City of Berkeley*, 208 F.R.D. 288, 291 (N.D. Cal. 2002), *aff'd* 433 F.3d 1253 (9th Cir. 2006), *overruled in part on other grounds by Sprint Telephony PCS, L.P. v. County of San Diego*, 543 F.3d 571, 577 (9th Cir. 2008).   In addition, under the Supreme Court's most recent formulation of Rule 12(b)(6), a plaintiff cannot "plead the bare elements of his cause of action, affix the label 'general allegation,' and expect his complaint to survive a motion to dismiss." *Ashcroft v. Iqbal, 129* S.Ct 1937,

2

1954 (2009). Instead, a complaint must set forth enough factual matter to establish plausible grounds for the relief sought. *See Bell Atl. Corp. v. Twombly*, 127 S.Ct. 1955, 1964-66 (2007). ("[A] plaintiff's obligation to provide 'grounds' of his 'entitle[ment]' to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."). Factual allegations must be enough to raise a right to relief above the speculative level. *Id.*, citing to 5 C. WRIGHT & A. MILLER, FED. PRACTICE AND PROCEDURE § 1216, at 235-36 (3d ed. 2004) ("[T]he pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action"). However, all allegations of fact by the party opposing the motion are accepted as true and are construed in the light most favorable to that party. *McGlinchy v. Shell Chemical Co.*, 845 F.2d 802, 810 (9th Cir. 1988).

A motion for judgment on the pleadings under Rule 12(c) is "essentially equivalent to a Rule 12(b)(6) motion to dismiss, so a district court may 'dispose of the motion by dismissal rather than judgment.'" *Technology Licensing Corp. v. Technicolor USA, Inc.*, 2010 WL 4070208 (E.D. Cal. Oct. 18, 2010)(quoting *Sprint Telephony PCS, L.P. v. County of San Diego*, 311 F.Supp.2d 898, 902 03 (S.D.Cal.2004)). The moving parties have expressly requested that the court dismiss the adversary proceeding. Given the nature of the pleadings in this case and the requested relief, the court shall proceed to consider the request and rule on this in the same manner as a Rule 12(b) motion to dismiss.

Generally, the court may consider only the allegations made in the complaint and the answer; extrinsic evidence and factual

contentions may not be taken into account. *Powe v. Chicago*, 664 F.2d 639, 642 (7th Cir. 1981). If extrinsic matters are offered and not excluded by the court, then the motion for judgement on the pleadings is converted to a motion for summary judgement. Fed. R. Civ. P. 12(d); *Hal Roach Studios, Inc.*, 896 F.2d at 1550. The court shall not treat the present motion as a summary judgment, but limited it to what has been expressly requested by the Defendants, a motion to dismiss the FAC.

**EXTRINSIC EVIDENCE CONSIDERED**

Both the Defendants and Debtor offer extensive extrinsic evidence in support of their positions. In both cases these facts were not included in the pleadings which the court must look to in deciding a Fed. R. Civ. P. 12(c) motion. Defendants' exhibits are offered under the guise of being judicially noticeable; they are not. Only those facts which are generally known within the territorial jurisdiction of the court or capable of accurate and ready determination by resort the sources whose accuracy cannot reasonably be questioned. Fed. R. Evid. 201(b). The exhibits offered by Defendants -- a deed of trust and notices issued pursuant to the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. §§2601-2617 -- are not sources whose accuracy cannot reasonably be questioned. *See, e.g.*, Fed. R. Evid. 802, 901.

Moreover, Plaintiff-Debtor' 129-page exhibit document lodged with chambers is not properly considered in this context. Plaintiff-Debtor uses the exhibit document to attempt to bolster the substance of general allegations made in the FAC or make new allegations. This is not permitted.

///

4

**GROUNDS STATED IN MOTION FOR RELIEF REQUESTED**

In this case the various Defendants bring the present motion to dismiss the FAC as to all Defendants for failure to state a claim against any of the Defendants.   The grounds for relief on this Motion stated with particularity as required by Rule 7, Federal Rules of Civil Procedure, and Rule 7007, Federal Rules of Bankruptcy Procedure are:

1.   There are no charging allegations against any defendants other than OneWest Bank.

2.   As to OneWest Bank are meritless and predicated on demonstrably inaccurate allegations that OneWest Bank –

      a.   Prepared and issued informational statements pursuant to the Real Estate Settlement Procedures Act,

      b.   (b) Which statements advised of an escrow account payment increase in the post-petition period,

      c.   Which the Plaintiff-Debtor wrongly characterizes as an impermissible effort to collect a debt in violation of the automatic stay.

3.   Plaintiff-Debtor' FAC does not allege any particular statement which was generated by OneWest Bank.

4.   Plaintiff-Debtor also advances a theory that the filing of the proof of claim by OneWest Bank violates the automatic stay.

Therefore, the Defendants conclude that the FAC should be dismissed as to all Defendants without leave to amend.

**ALLEGATIONS IN FAC AS TO NON-ONEWEST DEFENDANTS**

The court's consideration of this Motion begins with the allegations actually made in the FAC as to the Defendants other than OneWest Bank.   The FAC makes generic references to

"Defendants" in making broad allegations of misconduct, which requires the court to consider the specific allegations of misconduct, which defendant is alleged to have engaged in the conduct, and then interpret what alleged misconduct relates to which subgroup of "Defendants" in the FAC.

The specific allegations in the FAC include:

1. Plaintiff-Debtor is the debtor in this Chapter 13 case and resides in real property which secures an obligation of the Plaintiff-Debtor on a promissory note. FAC, ¶ 10.

2. Casa Blanca Mortgage, Inc, dba Shearson Mortgage received an adjustable rate promissory Note ("Note") FAC, ¶ 23.

3. The Deed of Trust securing the Note ("Deed of Trust") does not provide for an escrow account. FAC ¶ 31.

4. MERS was assigned the servicing responsibilities for the Note. FAC, ¶¶ 12, 23.

5. IndyMac Federal Savings Bank, FSB purchased the Note. FAC, ¶ 15.

6. The FDIC was appointed as receiver for IndyMac Bank and its assets were passed through:

    a.    IMB HoldCo, LLC, FAC, ¶¶ 16, 25;

    b.    IMB Management Holdings, LLC, FAC ¶¶ 18, 25;

    c.    OneWest Venture, LLC, FAC, ¶¶ 19, 25;

    d.    OneWest Bank Group, LLC, FAC, ¶¶ 20, 25; and ultimately to

    e.    OneWest Bank, FSB, FAC, ¶¶ 15, 25.

7. A general allegation that unidentified "Defendant(s)" were the agents for the FDIC during the period the assets were passed to OneWest Bank, FSB. FAC ¶ 27.

8.   A general allegation that unidentified "Defendant(s)" were the agents for OneWest Bank, FSB . FAC ¶ 25.

9.   Fidelity National Information Services, Inc. is a defendant with default software and/or usage of NewTrak, and is in privity with the actual holder of the secured claim in this bankruptcy case. FAC, ¶ 21.

10.   Plaintiff-Debtor's Chapter 13 Plan provides for payment of the Note as a Class 1 claim in this bankruptcy case. FAC, ¶¶ 35, 39.

11.   OneWest Bank filed a proof of claim on or about July 15, 2009, based on the Note and Deed of Trust which includes all past due mortgage payments, property tax or insurance advances, and escrow balances. FAC, ¶ 38.

12.   An unnamed "Defendant," conducted an "Escrow Analysis" pursuant to RESPA upon notice of a bankruptcy filing. FAC, ¶ 50.

13.   Unnamed "Defendants" do not distinguish between pre and post-petition escrow advances when conducting a post-petition escrow analysis. FAC, ¶ 51.

14.   On July 17, 2009, unnamed "Defendants" forwarded a letter to the Chapter 13 Trustee informing him that the post-petition mortgage payments increased to $2,065.91. FAC, ¶ 42.

15.   Based on the alleged increase in the post-petition monthly mortgage payment the Chapter 13 Trustee objected to the Plaintiff-Debtor's proposed Chapter 13 Plan. FAC, ¶ 43.

16.   On February 16, 2010, an unnamed "Defendant" stated that the correct post-petition monthly mortgage payment is $1,969.85, and that any prior notices with a different amount are incorrect. FAC, ¶ 45.

17.   Unnamed "Defendants" acts of issuing the post-petition mortgage changes were for the purpose of collecting pre-petition claims.  FAC, ¶ 54, 56.

18.   Actions of unidentified "Defendants" were willfully and intentionally done to obtain payment on pre-petition claims through increased post-petition Note payments.  FAC, ¶¶ 80, 81.

19.   Unidentified "Defendants'" use of the post-petition notices of Note payment increases are intentional, with knowledge of the automatic stay, systematic, and to collect pre-petition amounts owed by Plaintiff-Debtor.  FAC, ¶¶ 66, 67, 68, 71.

20.   Unidentified "Defendants" knew that when the Chapter 13 Trustee received the notices of post-petition increased Note payments, the Trustee would collect the increased amount from the Plaintiff-Debtor for the unidentified "Defendants."  FAC, ¶ 99.

21.   Unidentified "Defendants" increased the post-petition Note payments with the knowledge that it was improper and would not be permitted by the court unless it was so provided in a confirmed Chapter 13 plan or pursuant to an order granting relief from the automatic stay.  FAC, ¶ 106.

22.   As a direct result of the post-petition notices of changes in the mortgage payments, the Chapter 13 Trustee collected the post-petition increased mortgage payments on the Note.  FAC, ¶ 54.

23.   Unidentified "Defendants'" post-petition escrow analysis includes "both post-petition advances of pre-petition escrow advances and fails to distinguish between escrow advances." FAC, ¶ 64.

24.   Unidentified "Defendants" acts have resulted in

8

Plaintiff-Debtor paying pre-petition taxes through the increased post-petition Note payments.  FAC, ¶ 74.

25.  Unidentified "Defendants" acts have resulted in Plaintiff-Debtor paying for improper forced place insurance through the increased post-petition Note payments.  FAC, ¶ 75.

26.  Unidentified "defendants" are alleged to have conspired to collect escrow advances through post-petition Note payment increases.  FAC, ¶ 97.

**CLAIMS ASSERTED AS TO THE NON-ONEWEST BANK, FSB DEFENDANTS**

In the FAC the Plaintiff-Debtor makes broad sweeping allegations of conduct against unidentified "Defendants" or "Defendant."  All but OneWest Bank, FSB, are alleged to have held an interest in the Note sometime in the past or provided loan servicing, but only OneWest Bank, FSB, is alleged to have asserted any rights or interest in the Note in this bankruptcy case.  As discussed in this ruling, merely alleging that someone was involved in a conspiracy does not make them responsible for the conduct of the defendant alleged to have engaged in the improper conduct.

As to the first four causes of action, the only Defendant alleged to have engaged in the conduct at issue is OneWest Bank, FSB.  From the allegations in the FAC, all of the other parties' interests alleged interests in the Note and Deed of Trust predate the bankruptcy filing.  For Fidelity National Information Services, Inc., the only allegation is that it provides software which OneWest Bank, FSB may have used in computing the post-petition mortgage payments.  No plausible claims are stated against the non-OneWest Bank, FSB defendants.  Rather, it appears that the Debtor is attempting to wrap them into this action by alleging a civil

conspiracy.

The Fifth Cause of Action, Civil Conspiracy, merely re-alleges the allegations in paragraphs 83 through 95 of the FAC (RESPA alleged violations), which incorporates other allegations in the FAC, and further asserts,

1.   Defendants have a common objective and course of action to improperly obtain payment of the pre-petition arrearage by incorrectly computing the post-petition installments due on the Note.

2.   Defendants intended by the notice of the post-petition installment increase to cause the Chapter 13 Trustee to collect the incorrect amounts from the Plaintiff-Debtor and pay those amounts to OneWest Bank.

3.   OneWest Bank filed an objection to confirmation asserting the incorrect post-petition installment amount as part of its efforts to collect the incorrect amount.

4.   The Defendants collectively concealed the practice of incorrectly computing post-petition installments and that OneWest Bank was improperly collecting the pre-petition arrearage as part of the post-petition installments, as well as collecting the pre-petition arrearage under the terms of the Chapter 13 Plan.

To establish a civil conspiracy in California one must show that defendants jointly engaged in a tort.   There is no separate civil action for conspiracy to commit a tort without there being an actual wrongful act committed. *Favila v. Katten Muchin Rosenman, LLP*, 188 Cal.App.4th 189, 206 (2010), and 5 WITKIN SUMMARY OF CALIFORNIA LAW TORTS, §45.   The effect of the "conspiracy" is that each of the defendants involved is individually liable.   Though incorporating

the general allegation paragraphs and the RESPA cause of action allegations, the general allegations of a conspiracy are generally made as to unidentified Defendants.

The California District Court of Appeal in *Black v. Bank of America*, 30 Cal. App. 4th 1 (1994) conducted the review of a conspiracy claim and the proper basis for such a claim when the parties involved were a corporation and the agents or employees of the corporation. The court concluded that it is well established California law that employees or agents of a corporation cannot conspire with their principal or employer when acting in their official capacity. In *Gruenberg v. Aetna Ins. Co*, 9 Cal.3d 566 (1973), the California Supreme Court concluded that an insured could not state a conspiracy claim against his insurance company and a separate insurance adjusting firm, a separate law firm, and employees of the two separate firms because only the insurance company had a duty of good faith and fair dealing with the insured. The two separate firms were not a party to the insurance contract and did not have such a duty to the plaintiff. In its *Doctors' Co. v. Superior Court*, 49 Cal3d 39 (1989), decision the California Supreme Court held that an attorney and an expert witness employed by an insurance company could not be held liable for conspiring to violate the company's statutory duties, again because the statutory duties were owed only by the insurance companies.

In *Younan v. Equifax Inc.*, 111 Cal.App. 3d 39 (1980), the court rejected a conspiracy claim for constructive fraud alleged to be based on a breach of fiduciary duty owed by a disability insurer. The insurer's agents did not owe the plaintiff a fiduciary duty, and only the insurer itself owed the fiduciary

duty.  However, the court allowed stand a claim for conspiracy to commit actual fraud, since even the agents owed a duty to the plaintiff to "abstain from injuring the plaintiff through express misrepresentations, independent of the insurer's implied covenant of good faith and fair dealing."

This issue is further addressed by the Supreme Court in *Applied Equipment Corp. v. Litton Saudi Arabia Ltd*, 7 Cal. 4th 503 (1994).  The Supreme Court first distinguished between alleged conspiracies arising out of tort claims and contract claims.  For contract claims, there is no tort obligation for one contracting party not to interfere with the performance of the contract.  There is merely a contractual obligation to perform as promised. Therefore, a party to a contract cannot be bootstrapped into a conspiracy tort.

For there to be a civil conspiracy there must be "the formation and operation of the conspiracy and damage resulting to plaintiff from an act or acts done in furtherance of the common design . . . In such an action the major significance of the conspiracy lies in the fact that it renders each participant in the wrongful act responsible as a joint tortfeasor for all damages ensuing from the wrong, irrespective of whether or not he was a direct actor and regardless of the degree of his activity."  Id, p. 512.

In this case, all of the operative allegations have been made against OneWest Bank for the remaining claims in this case for which the nonspecific conspiracy is alleged: (1) Declaratory Relief to determine the correct amount of the post-petition mortgage payments and (2) alleged violation of the automatic stay by OneWest

Bank in increasing the post-petition mortgage payment and its actions to obtain payment of that increased amount. The Plaintiff-Debtor only makes boilerplate allegations that unnamed Defendants "conspired" for the "recouping of pre-petition claims from post-petition estate property resulting in systematic injury to debtors." FAC ¶ 97. Further, there is no allegation as to what duties, if any, that these unnamed Defendants owe to the Plaintiff-Debtor and the damages to these Plaintiff-Debtor caused by the breach of those duties.

The court grants the motion to dismiss the FAC in *toto* as to Mortgage Electronic Registration Systems, Inc., IMB HoldCo, LLC, IMB Management Holdings, LLC, OneWest Venture, LLC, and OneWest Bank Group, LLC without prejudice. The court does not grant leave to amend at this time, in part because this is the FAC which has been fashioned after considerable effort by the Plaintiff-Debtor and the lack of any allegations that any of these Defendants have been involved in any way in this bankruptcy case or conduct of OneWest Bank, FSB. If the Plaintiff-Debtor believes that she subsequently identify facts sufficient to allege claims against the other Defendants, she may seek leave to amend from the court.

It has not been alleged that OneWest Bank and others breached their duties to the Plaintiff-Debtor by conspiring with others. OneWest Bank, FSB cannot conspire with itself to violate an obligation it owes to the Plaintiff-Debtor. The court dismisses the Fifth Cause of Action for conspiracy as to OneWest Bank, FSB without prejudice and without leave to amend.

### FIRST CAUSE OF ACTION FOR DECLARATORY RELIEF

The court may only grant declaratory relief where there is an

actual controversy within its jurisdiction. *Am. States Ins. Co. v. Kearns*, 15 F.3d 142, 143 (9th Cir. 1994). The controversy must be definite and concrete. *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240-41 (1937). OneWest argues that Debtor has failed to set out any facts demonstrating that a RESPA Notice was generated to collect pre-petition claims. However, in reading the FAC in the light most favorable to the Plaintiff-Debtor, the FAC does state that OneWest Bank conducted an escrow analysis, that the escrow analysis caused pre-petition escrow shortfalls to be included in post-petition payments, and that Plaintiff-Debtor and Chapter 13 Trustee were notified of this improper increased amount so that such amount would be paid post-petition to OneWest Bank. Further, it is alleged that OneWest Bank has received the improper post-petition payments.

From a fair reading of the FAC it is clear that Plaintiff-Debtor allege that a dispute exists between OneWest Bank and Plaintiff-Debtor concerning the correct amount of the post-petition installments which are properly due on the secured claim. The request for declaratory relief is not duplicative of other causes of action. Only after the court determines the correct amount of the post-petition payments will the Plaintiff-Debtor, OneWest Bank, FSB, and the Chapter 13 Trustee knows the correct amount to be paid monthly. Determination of this amount is independent of any determination as to whether OneWest Bank, FSB's conduct violated the automatic stay. Merely because the parties disagree as to the correct computation of a post-petition payment does not automatically create an actionable violation of the automatic stay.

The court reads OneWest Bank's Motion to also object to the

14

Plaintiff-Debtors sliding a reference to injunctive relief and restitution into the First Cause of Action. To the extent that the Plaintiff-Debtors are seeking injunctive relief, restitution, or other adjudication of rights in the First Cause of Action, such are improper as part of this declaratory relief claim. To the extent that a "dispute" exists as to whether any of the Defendants have violated rights of the Plaintiff-Debtors, then the appropriate action may be commenced asserting those rights and damages which may be recoverable. Plaintiff-Debtors have not pleaded claims for the additional relief, but has merely added those words to the relief requested. The court will not, and cannot, issue a precursory or advisory opinion as to other rights or interests the Plaintiff-Debtors may or may not have against any of the Defendants.

The Motion is denied as to the claim for Declaratory Relief against OneWest Bank, and is granted to the extent that the First Cause of Action includes a request for injunctive relief or restitution, that portion is dismissed without prejudice. No leave to amend is granted.

### SECOND AND THIRD CAUSES OF ACTION FOR VIOLATION OF AUTOMATIC STAY

The Plaintiff-Debtor asserts that the conduct of OneWest Bank, FSB in increasing the post-petition payments violated the automatic stay by recovering payment of pre-petition arrearage outside of a Chapter 13 plan. The Plaintiff-Debtor alleges that OneWest Bank, FSB has asserted the claim in this case and sought to obtain payment on the obligation evidenced by the Note. The Plaintiff-Debtor does not allege that any of the other persons named as

Defendants filed a claim or attempted to obtain payment on the Note.

OneWest argues that Plaintiff-Debtor fail to alleged sufficient facts to establish a controversy, Plaintiff-Debtor failed to plead the existence of a post-petition RESPA Notice, that a RESPA Notice could not violate the automatic stay as a matter of law, the request for declaratory relief is impermissibly duplicative, and Plaintiff-Debtor fail to allege sufficient facts to establish a controversy with regarding a proof of claim.

OneWest Bank, FSB, places great reliance on the Bankruptcy Appellate Panel decision in *Zotow v. Johnson*, et. al., 432 B.R. 252 (9th Cir. BAP 2010). In seeking to dismiss this cause of action, OneWest Bank, FSB asserts that a RESPA Escrow Account Disclosure Statement, as a matter of law, is merely informational and not an attempt to collect a debt. In *Zotow*, BAC Home Loan Servicing, LP ("BAC") sent one post-petition notice to the debtors showing an increase in the post-petition monthly mortgage payment. It was further alleged that BAC received several payments from the Chapter 13 trustee at the increased amount. The Bankruptcy Appellate Panel was reviewing the decision of the bankruptcy court after an evidentiary hearing on an objection to claim, not on a motion to dismiss.

The *Zotow* court first considered the decision of the Fifth Circuit Court of Appeals in *Campbell v. Countrywide Home Loans, Inc.*, 545 F.3d 348 (5th Cir. 2008). In *Campbell*, the Fifth Circuit Court of Appeals concluded that the automatic stay precluded Countrywide Home Loans, Inc. ("Countrywide") from attempting to obtain payment on pre-petition arrearages other than as permitted

by the Bankruptcy Code.   The obligation owing for a pre-petition arrearage, even if the claim is subject to the anti-modification provision of 11 U.S.C. § 1325(b)(2), is a pre-petition claim subject to the automatic stay provisions of 11 U.S.C. § 362(a). *Id.* at 354.   However, the only conduct by Countrywide in *Campbell* was filing a proof of claim stating the higher installment amount. Filing a proof of claim, even one which grossly overstates the claim, was not held to be a violation of the automatic stay.   *Id.* at 356.

The Third Circuit Court of Appeals has also addressed this issue, again with Countrywide increasing the post-petition installments to recover a pre-petition arrearage.   After the bankruptcy case was filed, Countrywide issued a revised escrow analysis and demand for payment to the debtors.   The Third Circuit Court of Appeals concluded that the pre-petition arrearage was part of the pre-petition claim which was governed by the Bankruptcy Code.   Countrywide was entitled to be paid the pre-petition arrearage portion of its claim, but Countrywide could not violate the automatic stay to obtain payment of the pre-petition arrearage. The Third Circuit concluded that an attempt to obtain payment of a pre-petition arrearage outside the plan payment could be a violation of the stay.   The matter was remanded to the trial court to determine if the violation was willful to support an award of damages pursuant to 11 U.S.C. § 362(k).   *In re Rodriguez*, 629 F.3d. 136, 143-144 (3rd Cir. 2010).   This decision was issued after the Bankruptcy Appellate Panel ruling in *Zotow*.

The Panel in *Zotow* considered the scope of the automatic stay with respect to communications relating to pre-petition claims.

Not every communication is prohibited. Rather, prohibited communications are those which, based on direct or circumstantial evidence, are geared toward collection of pre-petition debt, and which are accompanied by coercion or harassment. *Zotow*, 432 B.R. at 259. Relying on *Morgan Guar. Trust Co. Of N.Y. v. Am. Sav. And Loan Ass'n*, 804 F.2d 1487, 1491 (9th Cir. 1986), the Panel concluded that a mere request for payment and informational statement are permissible communications which do not violate the automatic stay. *Id*. The Bankruptcy Appellate Panel also recognizes that, "Whether a communication is a permissible or prohibited one is a fact-driven inquiry which makes any bright line test unworkable." *Id*. at 258.

In *Morgan Guar. Trust Co.*, the Ninth Circuit addressed the issue of whether the presentment of a Note issued by Johns Manville violated the automatic stay.[1] Because the automatic stay seeks to ensure the orderly administration of the debtor's estate, provide a breathing spell for the debtor, maintain the status quo, and prevent harassment of a debtor by sophisticated creditors, a request for payment (as with the presentment of a negotiable instrument) does not violate the automatic stay unless it is accompanied by coercion or harassment, such as immediately or potentially threatening the debtor's possession of property. *Morgan*, 804 F.2d at 1491. Examples of communications cited by the Ninth Circuit as violating the automatic stay included: (1) notice of intent to terminate lease, (2) notice of intent to terminate franchise, (3) notice of medical clinic refusal to provide future

---

[1] This predated the amendment to 11 U.S.C. § 362(b)(10) which exempts presentment of a negotiable instrument from the automatic stay.

18

medical services because of refusal to pay for prior services, (4) letter informing debtor that an attorney had been hired to collect a delinquent account, (5) college refusing to release transcripts as a method to force payment, and (6) a creditor who made repeated visits and telephone calls to a debtor. *Id.* Examples of communications not violating the automatic stay included: (1) letter sent to debtor's attorney that a credit union would not have further business dealings with the debtor unless debt was reaffirmed, and (2) communications setting out the basis of the claim (informal proof of claim). *Id.*

The *Zotow* court concluded that the stay had not been violated on the facts of that case because Countrywide sent a single notice which did not request payment. The one notice communicated the information obtained in the recent escrow analysis computed by Countrywide. The record established at the evidentiary hearing revealed no indication that Countrywide attempted to collect the pre-petition arrearage outside the bankruptcy court. The Panel placed significant weight on there being only a single notice sent to the debtor. Given that there was one notice, no other action taken to obtain payment, and undisputed facts which did not constitute harassment or coercion, the Panel concluded that the single notice did not violate the automatic stay.

Applying both the spirit and letter of *Morgan Guar. Trust Co.*, creditors and debtors are allowed to communicate their disparate positions and rights they seek to assert. It is when coercion or harassment is coupled with the communication that they can be a violation of the automatic stay.

In this case, the Plaintiff-Debtor argues that the calculation

itself, in addition to the filing of the notice of change in mortgage payment, violates the automatic stay. It is asserted that filing the notice of change in mortgage payment will result in the Chapter 13 Trustee forcing the Plaintiff-Debtor to pay the pre-petition arrearage as a post-petition mortgage installment rather than as a proper plan payment. However, the Plaintiff-Debtor alleges nothing more to indicate that there was any harassing or coercive conduct by OneWest Bank. Merely that it asserted the right to a higher post-petition payment based upon its interpretation of RESPA.

With respect to OneWest Bank (the court having identified OneWest Bank as the only potential defendant being referenced under the Second and Third Causes of Action), the Plaintiff-Debtor make generic broad sweeping allegations of a pattern of conduct in which OneWest Bank attempted to obtain payment on a pre-petition claim outside the strictures of the Bankruptcy Code. But the specific allegations in this case are that OneWest Bank communicated to the Plaintiff-Debtor, Chapter 13 Trustee, and everyone else in the case that OneWest Bank computed an increase in the post-petition payments. At best, the Plaintiff-Debtor argues that she knew the Chapter 13 Trustee could seek to dismiss the case if she failed to pay an undisputed post-petition mortgage payment or otherwise assert their contention as to the correct amount.

The allegations in this indicate that there was some communication and correction made by OneWest Bank to the extent that a dispute was identified. While stating that the post-petition monthly mortgage payments were noticed as increasing to $2,443.91 (FAC, ¶ 42), this was reduced to $1,634.00 (FAC, ¶ 43) in

October 2009, and $1,242.63, with a refund of $3,225.80, in January 2010 (FAC, ¶ 44). The court does not have any allegations relating to how and why these adjustments were made, but she appears indicative of a creditor attempting to determine the correct amount, rather than one blindly demanding incorrect sums.

Glaring in its absence in the FAC are any allegations contending that OneWest Bank, either directly or indirectly, threatened or harassed the Plaintiff-Debtor. Commonly in the context of consumer harassment one sees multiple phone calls, multiple letters, and communications stating that adverse consequences will occur if the consumer does not immediately comply with the demands made by the creditor. In this case, nothing is alleged. Merely that Central Mortgage provided notice that it computed a post-petition installment payment increase and the Plaintiff-Debtor did not object to the increased payment.

The court also rejects Plaintiff-Debtor's apparent contention that she has no obligation to address disputes concerning the proper post-petition payment amounts to be made for Class 1 or Class 2 Claims, or the correct determination of a creditor's pre-petition arrearage to be paid through the Chapter 13 Plan. Plaintiff-Debtor appears to have adopted a strategy that rather than addressing such issues as part of confirming or enforcing their Chapter 13 plan, she can elect instead to sue the creditor alleging a violation of the automatic stay and seek monetary recovery.

Plaintiff-Debtor has the option of choosing to file a Chapter 13 reorganization or Chapter 7 liquidation. Choosing a reorganization necessarily entails much more significant emotional,

financial, and time commitments than merely filing a Chapter 7 and
proceeding directly to a fresh start. However, a properly
prosecuted Chapter 13 case can yield a significantly advantageous
economic benefit for debtors. In many cases debtors strip junior
liens from their residence and cure the arrearage on the senior
lien, thereby saving their home and realizing future appreciation
without paying the junior liens.

In this setting, it is not unreasonable for a Chapter 13
debtor, advancing the interests of the estate and the debtor, to
address a pre-petition claim dispute consisting of the correct
computation of the post-petition payment. This includes
determining the correct amount of the pre-petition arrearage to be
paid through the plan. A debtor has many different tools in his or
her arsenal, including filing a claim for the creditor, objecting
to a claim, obtaining a determination of a plan term as part of a
confirmation hearing, supplemental proceedings in enforcement of a
plan,[2] and a declaratory relief action. To the extent that there
exists a contractual attorneys' fees provision, presumably a
prevailing debtor would seek to recover  attorneys' fees and costs
for the benefit of the estate and other creditors.

Though creditors' counsel may argue that the present type of
situation arises because a debtor fails to communicate with the
creditor, the court is cognizant of the realities of modern home
loan debt servicing. The persons computing the current (post-

---

[2]/ 11 U.S.C. Section 1327(a) provides, "The provisions of a
confirmed plan bind the debtor and each creditor,..., and whether
or not such creditor has objected to, has accepted, or has
rejected the plan." This is the new "contract" to be enforced
between the parties. *Max Recovery v. Than* (*In re Than*) 215 B.R.
430 435 (9th Cir. BAP 1997).

petition) mortgage payments are separate from the bankruptcy group and the attorney (if any) attempting to represent the creditor in the bankruptcy case.   Whether because of the volume of defaulted home loans or a conscious management decision, a thoughtful response to a debtor's dispute of a mortgage payment or arrearage calculation often does not occur until the creditor and counsel are forced to a court hearing.

OneWest Bank's argument that RESPA creates a free floating exemption from the automatic stay for however it computes and seeks payment of post-petition mortgage installments is as unpersuasive with this court as that argument has been with the courts in *Rodriguez* and *Campbell*.   While the Bankruptcy Code does not prohibit adjustments for post-petition changes authorized by RESPA, the automatic stay provisions of 11 U.S.C. §362(a) prohibit the collection of pre-petition debts outside of the bankruptcy.   Had Congress intended to exempt only demands for payment cloaked in RESPA from the automatic stay it would have said so in a clear and unambiguous manner.   Congress clearly knows how to make an exception to the automatic stay, *see* 11 U.S.C. §362(b), and the court will not imply that Congress gave OneWest Bank and other servicers or Note owners free reign to do whatever they sought to obtain payment on pre-petition claims without regard to the Bankruptcy Code.

The motion to dismiss the Second and Third Causes of Action[3]

---

[3]/ The Third Cause of Action asserts a "violation" of 11 U.S.C. § 362(k).  Subparagraph (k) is a remedies provision for violation of the other provisions of § 362.  The court reads the Second and Third Causes of Action as one claim for statutory damages under § 362(k), as opposed to a request for sanctions under 11 U.S.C. § 105 and the inherent powers of this court.

for violation of the automatic stay against OneWest Bank is granted and the causes of action are dismissed without prejudice. No leave to amend granted.

### FOURTH CAUSE OF ACTION
### VIOLATION OF REAL ESTATE SETTLEMENT PROCEDURES ACT

Plaintiff-Debtor alleges that the Note is subject to loan servicing provisions of RESPA. It is further alleged that under RESPA the Defendants were required to provide Plaintiff-Debtor with written notice of each sale or transfer of the assignment, sale or transfer of the loan or changes in the servicer for the loan.

The FAC alleges that the various Defendants alleged to have acquired and transferred the Note, until it ultimately ended up with OneWest Bank failed to provide such written notices. Plaintiff-Debtor further assert that the Defendants have violated RESPA by improperly computing the monthly post-petition installments which have been demanded and collected from the Plaintiff-Debtor. Additionally, that Defendants have failed to refund or credit back charges for improperly placed insurance, and have sent Plaintiff-Debtor incorrect post-petition RESPA escrow analyses.

As correctly stated by Defendants, while a private right of action exists for the failure to provide the servicing notice, the Plaintiff-Debtor must assert a damages claim caused by the failure to provide the notice. 12 U.S.C. § 2605(f), *Jensen v. Quality Loan Serv. Corp*, 702 F. Supp. 2d 1183, 1196-1197 (E.D. Cal. 2010), and *Wilson v. JP Morgan Chase Bank*, 2010 U.S. Dist. LEXIS 63212 (E.D. Cal. 2010). From a review of the FAC, the Plaintiff-Debtor does not assert any damages arising from the failure to provide the notices

of change in servicer.

An additional RESPA claim has been asserted for the improper calculation of post-petition installments. The FAC is clear that the only alleged conduct in asserting an increase in post-petition installments has been by OneWest Bank. However, as asserted by Defendants, no private right of action is provided for a violation of the limitation on requirement of advance deposits in escrow accounts pursuant to 12 U.S.C. §2604. *See Hensley v. Bank of N.Y. Mellon*, 2010 U.S. Dist. LEXIS 135812 (ED Cal. 2010), and *Brohpy v. Chase Manhattan Mortgage Co.*, 947 F. Supp. 879, 883 (E.D. Penn. 1996).

The Fourth Cause of Action is dismissed as to OneWest Bank, without prejudice. No leave to amend is granted at this time.

## CONCLUSION

The court grants the Motion and dismisses the FAC and all causes of action as to Mortgage Electronic Registration Systems, Inc., IMB HoldCo, LLC, IMB Management Holdings, LLC, OneWest Venture, LLC, FAC, and OneWest Bank Group, LLC without prejudice and without leave to amend.

The court grants the Motion and dismisses that portion of the First Cause of Action which requests injunctive relief or restitution, and the Second, Third, Fourth and Fifth Cause of Action as to OneWest Bank, FSB, without prejudice and without leave to amend.

The court denies the Motion as to the First Cause of Action for Declaratory Relief as to OneWest Bank, FSB.

This Memorandum Opinion and Decision constitutes the court's findings of fact and conclusions of law pursuant to Fed. R. Civ. P.

1  52, and Fed. R. Bankr. P.  9014 and 7052.

2      The court shall issue an order consistent with this ruling.

3  Dated: July _2_ , 2011

4                              RONALD H. SARGIS, Judge
5                              United States Bankruptcy Court

This document does not constitute a certificate of service.  The parties listed below will be served a separate copy of the attached document(s).

---

Peter Macaluso
7311 Greenhaven Dr #100
Sacramento, CA 95831

Christina Stanley
7395 Patero Cir
Sacramento, CA 95823

Christopher Giaimo
1050 Connecticut Ave NW #1100
Washington, DC 20036

Joseph Chairez
600 Anton Blvd #900
Costa Mesa, CA 92626

Joshua del Castillo
515 S Figueroa St 9th Fl
Los Angeles, CA 90071

Terry Loftus
1770 4th Ave
San Diego, CA 92101

Lawrence Loheit
PO Box 1858
Sacramento, CA 95812-1858

Office of the U.S. Trustee
Robert T Matsui United States Courthouse
501 I Street, Room 7-500
Sacramento, CA 95814